UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANIEL COATES,

Plaintiff,

-vs- 09-CV-933-JTC

CITY OF NIAGARA FALLS, NEW YORK, THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, TEAMSTERS JOINT COUNCIL NO. 46, and THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL NO. 264,

Defendants.

---

Plaintiff Daniel Coates brought this action against the City of Niagara Falls, New York (the "City"), the International Brotherhood of Teamsters, and Teamsters Local No. 264 (collectively, the "Union"), asserting claims for discrimination and retaliation on the basis of race (African American) in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law § 296, as well as a "hybrid" claim for breach of the collective bargaining agreement between the City and the Union in violation of Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and breach of the Union's duty of fair representation in violation of Section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). Both the City and the Union have moved for summary judgment. For the reasons that follow, the summary judgment motions are granted.

## BACKGROUND

The following facts are derived from defendants' statements of fact on summary judgment (Items 51-5 and 56) and supporting affidavits and exhibits, submitted in accordance with Rule 56 of the Local Rules of Civil Procedure for the Western District of New York.[1]

For many years, the City Police Department operated a detention center at police headquarters, located on Hyde Park Boulevard, where prisoners and detainees were held for short periods of time. Male and female prisoners were processed and held in separate areas of the detention center. Uniformed police officers, represented for collective bargaining purposes by the Niagara Falls Police Club, Inc. (the "Police Club"), were responsible for guarding male prisoners, and female civilian "Detention Aides," represented for collective bargaining purposes by Teamsters Local 264, were responsible for guarding female prisoners. Item 51-5, ¶¶ 1-5; Item 56, ¶¶ 1-2.

---

[1]Local Rule 56(a)(1), in effect at the time the summary judgment motions were filed, requires that a party moving for summary judgment include with its motion a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried ...." Local Rule 56(a)(2) provides:

> The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement.

Plaintiff has not submitted the responding statement required by Local Rule 56(a)(2). As the Second Circuit has noted, "[w]hen a party has moved for summary judgment ... and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir.1992). Accordingly, the facts set forth in defendants' Local Rule 56(a)(1) statements are deemed admitted to the extent they are supported by the record evidence. *See Bonilla v. BOCES*, 2010 WL 3488712, at *1 (W.D.N.Y. Sept. 2, 2010).

In March 2006 the City informed the Police Club that it was planning to convert the operations of the detention center to a full civilian staff and reassign the police officers guarding male prisoners to the patrol division. The Police Club filed an Improper Practice charge with the Public Employment Relations Board ("PERB") (Charge No. U-26776) alleging that the City's plan to "unilaterally transfer[ ] exclusive bargaining unit work to nonunit civilians" violated New York Civil Service Law § 209-a (commonly referred to as the "Public Employees' Fair Employment Act," or the "Taylor Law"). Item 64-4, p. 18. The Union intervened on behalf of Detention Aides, and reached an informal agreement with the City to the effect that, if the City was allowed to "civilianize" the male area of the detention center, the Union would become the exclusive collective bargaining representative for both male and female Detention Aides. Item 64-3, ¶ 8. In a decision dated April 25, 2008, PERB Administrative Law Judge M. Lynn Fitzgerald dismissed this charge, finding that civilian staffing of the detention center would not violate the Taylor Law because any resulting detriment to the interests of the public employees in the bargaining unit would be "minimal, particularly when compared to the benefit to the City in adding four additional officers to patrol." Item 64-4, p. 26.

In early 2007, while Charge No. U-26776 was pending, plaintiff was hired by the City as a Detention Aide. His probationary appointment became permanent in April 2008 following successful completion of a civil service examination. At about the same time plaintiff was hired, the City also hired David Locurto, a White male, and Crystal Klein, a White female, from the civil service list to work as Detention Aides. The male and female Detention Aides were hired at the same starting hourly wage ($10.00 per hour), but male aides were hired as full time employees and received fully paid health insurance, while

female aides were hired as part-time employees and did not receive health insurance. Mr. Locurto's employment was terminated shortly after he was hired, leaving plaintiff as the only male Detention Aide. Item 51-5, ¶¶ 6-13; Item 56, ¶¶ 3-7.

In 2009 the City completed construction of a new public safety facility located on Main Street to accommodate a new detention center and City courthouse. In March 2009, the City notified the Union that, due to the layout of the new facility, a new policy would be implemented which allowed tasers to be used in secure areas of the detention center and, because civilians are prohibited under New York Penal Law from using tasers (*see* N.Y Penal Law §§ 265.01, 265.20), the Detention Aide position would be eliminated and prison guard services would be provided by uniformed police officers. Item 51-5, ¶¶ 19-20; Item 56, ¶¶ 18-22. As a result, in April 2009 the Union filed an Improper Practice charge with PERB objecting to the City's abolishment of the Detention Aide position. *See* Item 64-4, pp. 32-35.

In early May 2009, plaintiff filed a verified complaint with the New York State Division of Human Rights ("NYSDHR") against the City charging discrimination in employment on the basis of age, race, and gender, in violation of New York Human Rights Law (Charge No. 10133572; cross-filed with the United States Equal Employment Opportunity Commission ("EEOC") as Charge No. 16GA903901). He alleged that, as a fifty-one year old African American male, he was being paid $10.00 per hour for performing the same job duties as female Detention Aides, who were being paid approximately $17.00 per hour, and police officers, who were being paid approximately $25.00 per hour. He also claimed that he received no vacation time, sick days, personal leave, or other benefits received by full-time City employees. *See* Item 54-1, pp. 2-7. On February 19, 2010, the

NYSDHR issued a "Determination and Order After Investigation" finding no probable cause to believe the City engaged in unlawful discrimination. The determination was based on the following:

> The investigation revealed that [plaintiff] and a younger, white female detention aide were hired around the same time and both earned $10.00 an hour. The file reflects that the other detention aides, prior to [plaintiff]'s hire, had obtained a higher rate of pay due to settlement of litigation alleging discrimination base on sex. The record indicates that at the time the Charge was filed and answered, there were ongoing discussions between [plaintiff]'s union and [the City] to address the pay issue. The record show [the City] hired [plaintiff] at age 48. The evidence indicates that, as of 5/09, the job title of Detention Aide was abolished. The evidence does not support a belief [plaintiff] was denied equal terms, conditions or privileges of employment because of his age, race/color or sex.

Item 54-1, pp. 7-8.

Meanwhile, in May and June 2009, representatives from the City and the Union engaged in extensive settlement negotiations regarding the propriety and impact of the decision to transfer Detention Aides' duties to uniformed police officers, and the parties asked PERB to postpone any action on the pending Improper Practice charges related to this issue while negotiations were ongoing. As a result of the negotiations, the Union and the City reached a "Settlement Agreement" in June 2009 whereby the City agreed to award severance pay to Detention Aides based on their years of service, according to the following formula:

| **Years of Service** | **Weeks of Severance Pay** |
|---|---|
| 1 year but not more than 2 years | 2 |
| 2 years but not more than 5 years | 5 |
| 5 years but not more than 10 years | 8 |
| 10 years but not more than 15 years | 12 |
| 15 years but not more than 20 years | 20 |
| 20 years but not more than 25 years | 25 |
| More than 25 years | 52 |

*See* Item 53-1, pp. 13-17. As an alternative to severance, the City agreed to offer Detention Aides continued employment with the City in a "Cleaner" position at full time pay and benefits. *See id.* at 14-15.

To implement the Settlement Agreement, the City and the Union negotiated a separate "Separation and General Release" for each of the eight Detention Aides (the "Separation Agreements"). *See id*. at 20-67. Two of the eight Detention Aides (Emily Belkota and Pearl Murphy) accepted Cleaner positions, and the remaining six were offered the following consideration in their respective Separation Agreements (listed here in order of seniority):

| | Name | Hire Date | Severance Amt. | Add'l Amt. | Total |
|---|---|---|---|---|---|
| 1. | Donna Donohue | 1/16/90 | $23,362.70 | N/A | $23,362.70 |
| 2. | Kathleen Terrana | 1/22/90 | $18,693.25 | N/A | $18,693.25 |
| 3. | Mary Richardson | 10/16/91 | $14,677.41 | N/A | $14,677.41 |
| 4. | Susan Winchell | 7/1/97 | $12,531.00 | N/A | $12,531.00 |
| 5. | Daniel Coates | 1/2/07 | $1,995.80 | $7,000 | $8,995.80 |
| 6. | Crystal Klein | 12/10/07 | $573.33 | $2,500 | $3,573.33 |

Item 53, ¶ 19.

By virtue of his separately negotiated Separation Agreement (*id.* at 56-60), plaintiff was offered the choice between continued full-time employment with the City as a Cleaner, or accepting a severance payment in the amount of $1,995.80, plus the amount of $7,000 as additional compensation for release of all claims against the City, including the claims asserted in his then-pending NYSDHR charge or any other claims brought under "federal, state, or local law, constitution, rule, regulation, executive order or guideline from the beginning of the world through the effective date" of the Separation Agreement. Item 53-1, p. 57. As the above summary illustrates, Crystal Klein was also offered an additional

amount beyond her calculated severance payment as compensation for releasing all claims against the City related to higher hourly wages paid to the other, more senior, female Detention Aides. *See id.* at 63-66.

Plaintiff declined both the offer of severance pay and the alternative offer of continued employment as a Cleaner.[2] Instead, on October 29, 2009, plaintiff filed this lawsuit in which he alleges that the severance formula negotiated by the City and the Union "was arbitrarily devised, so as to award Plaintiff substantially less severance pay than his Caucasian co-workers." Item 1, ¶ 24. He alleges further that, while all of the individual Separation Agreements contained the same general release language, his Caucasian co-workers had no pending or prospective race discrimination claims to release, resulting in unequal treatment in the making and enforcement of contracts and retaliation in violation of 42 U.S.C. § 1981 and N.Y. Executive Law § 296. He also claims that the Union breached its duty under the collective bargaining agreement to fairly represent him with respect to negotiating the terms of the Separation Agreement, in violation of 29 U.S.C. §§ 185 and 159(a). *See* Item 1, ¶¶ 32-55.

The City moves for summary judgment dismissing the complaint against it, based on the following grounds:

1. Plaintiff may not sue the City pursuant to 42 U.S.C. § 1981.
2. Plaintiff's state Human Rights Law claim is barred by the "election of remedies" doctrine.

---

[2] Mary Richardson, the only other African American Detention Aide, also declined the offer of severance pay/continued employment as a Cleaner, and has filed an action in this court against the City and the Union, captioned *Richardson v. City of Niagara Falls, et al.*, No. 09-CV-824, based on the same causes of action and seeking substantially identical relief as plaintiff in this case.

3. Even if actionable, plaintiff's discrimination and retaliation claims against the City fail as a matter of law.

4. The City is not considered an "employer" within the meaning of the LMRA, and is not subject to liability for breach of the collective bargaining agreement.

*See* Item 52-1.

The Union also moves for summary judgment dismissing the complaint against it, based on the following grounds:

1. Lack of subject matter jurisdiction under the LMRA.

2. Plaintiff's claim for breach of the duty of fair representation is time-barred or, if timely asserted, fails as a matter of law.

3. Plaintiff cannot prove discrimination on the part of the Union.

See Item 51-6.

Each of these grounds is discussed in turn.

## DISCUSSION

### I. Summary Judgment

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although the language of this Rule has been amended in recent years, the well-settled standards for considering a motion for summary judgment remain unchanged. *See, e.g., Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299, 311 n. 7 (S.D.N.Y. 2011); Fed. R. Civ. P. 56, Committee's notes to 2010

amendments. Under those standards, the moving party bears the initial burden of establishing that no genuine issue of material fact exists. *Rockland Exposition, Inc. v. Great American Assur. Co.*, 746 F. Supp. 2d 528, 532 (S.D.N.Y. 2010), *aff'd*, ___F.App'x___, 2011 WL 5176188 (2d Cir. Nov. 2, 2011). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law …." *Id.*

Once the court determines that the moving party has met its burden, the burden shifts to the opposing party to "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). The nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars showing that a trial is needed …." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotation marks and citation omitted), *quoted in Kaminski v. Anderson*, 792 F. Supp. 2d 657, 662 (W.D.N.Y. 2011). In considering whether these respective burdens have been met, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks and citation omitted).

## II. The City's Motion for Summary Judgment

### A. 42 U.S.C. § 1981

42 U.S.C. § 1981 provides:

> (a) Statement of equal rights.
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).

In his First Claim for Relief, plaintiff alleges that the City discriminated against him in the making and enforcement of contracts in violation of § 1981 by requiring, as a condition to his acceptance of severance pay, extinguishment of his NYSDHR charge – a requirement not applicable to White Detention Aides. However, in *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units …." *Id.* at 733.[3] Accordingly, plaintiff may not sue the City for unequal treatment in the

---

[3] In 1991, Congress amended § 1981 to add a new subsection (c), providing that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." As recognized by this court in *M.O.C.H.A. Society, Inc. v. City of Buffalo*, 2007 WL 3354211 (W.D.N.Y. Nov. 9, 2007), this caused a split in the circuit courts regarding whether Congress intended to create a private cause of action against state actors, thus overruling the Supreme Court's decision in *Jett*, and the Second Circuit has not weighed in on the issue. However, the majority of the circuit courts (as well as the majority of district courts within the Second Circuit) that have addressed the issue have held that *Jett* remains good law. *See, e.g., Brown v. New York State Dept. of Correctional Services*, 583 F. Supp. 2d 404, 410 n. 1 (W.D.N.Y. 2008) (citing cases); *Bond v. City of Middletown*, 389 F. Supp. 2d 319, 328 (D.Conn. 2005). Following this weight of authority, and In the absence of controlling Second Circuit authority to the contrary, this court will not deviate from the Supreme Court's analysis of § 1981 in *Jett*.

negotiation of the Settlement and Separation Agreements, retaliation for filing the NYSDHR charge, or any other allegedly discriminatory conduct, pursuant to § 1981.

Because plaintiff cannot maintain a claim against the City under 42 U.S.C. § 1981, and has not alleged any facts to support a claim for municipal liability under 42 U.S.C. § 1983, *see Patterson v. County of Oneida, New York*, 375 F.3d 206, 226 (2d Cir. 2004) (plaintiff suing municipality for discrimination under either statute is required to show that the challenged acts were performed pursuant to a municipal policy or custom), the City is entitled to summary judgment dismissing plaintiff's First Claim for Relief.

**B. New York Human Rights Law**

In his Second Claim for Relief, plaintiff alleges that the City has engaged in discriminatory employment practices in violation of the New York State Human Rights Law, Executive Law § 296. However, the Human Rights Law provides that a person complaining of discrimination has a cause of action "in any court of appropriate jurisdiction for damages and such other remedies as may be appropriate, unless such person had filed a complaint hereunder with any local commission on human rights …." N.Y. Exec. L. § 297(9). This "election of remedies" provision precludes a plaintiff from bringing a Human Rights Law cause of action in either federal or state court if the plaintiff has filed a complaint with the NYSDHR based upon the same incident. *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000); *Borum v. Village of Hempstead*, 590 F. Supp. 2d 376, 382 (E.D.N.Y. 2008). A limited exception to this rule arises "where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is

annulled …." N.Y. Exec. L. § 297(9); *see also Whidbee*, 223 F.3d at 75-76; *Diagne v. New York Life Ins. Co.*, 2010 WL 5625829, at *9 (S.D.N.Y. Dec. 8, 2010).

As discussed above, plaintiff elected to file a charge with the NYSDHR alleging discriminatory conduct on the part of the City, and the NYSDHR found no probable cause for the charge. Under the election of remedies rule outlined above, plaintiff is precluded from pursuing his state Human Rights Law claim in this forum.

Accordingly, the City is entitled to summary judgment dismissing plaintiff's Second Claim for Relief.

### C. Discriminatory Severance/Retaliation

The City also contends that, even if plaintiff's claims are allowed to proceed in this forum, plaintiff has failed to come forward with a *prima facie* showing of discrimination or retaliation sufficient to withstand summary judgment. Generally, claims of race-based discrimination and retaliation brought under § 1981 are analyzed under the familiar burden-shifting framework adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), for the analysis of claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *See Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. In order to make out a *prima facie* case of racial discrimination in this action, plaintiff must show that (1) he is a member of a protected class; (2) his job performance was satisfactory; (3) he suffered from an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Pearson v. Unification*

*Theological Seminary*, 785 F. Supp. 2d 141, 153 (S.D.N.Y. 2011) (citing cases). Similarly, in order to demonstrate a *prima facie* claim of retaliation, plaintiff must demonstrate that: (1) he was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered an adverse employment action, and (4) there was a causal connection between the protected activity and the adverse employment action. *See Kessler v. Westchester County Dep't of Social Services*, 461 F.3d 199, 204 (2d Cir. 2006); *Quattrone v. Erie 2 Chautauqua–Cattaraugus Bd. of Co-op. Educational Services*, 2011 WL 4899991 (W.D.N.Y. Oct. 13, 2011).

Plaintiff's § 1981 claim fails as a matter of law at the third stage of the *prima facie* inquiry. Simply stated, the law is clear that a plaintiff alleging discriminatory treatment in the negotiation of his severance payment cannot claim to have suffered an adverse employment action where the "award of severance pay was a privilege rather than a right." *Matya v. Dexter Corp*., 2006 WL 931870, at * 15 (W.D.N.Y. Apr. 11, 2006), *aff'd*, 250 F.App'x 408 (2d Cir. 2007). In this regard, the submissions on file reveal that the collective bargaining agreement between the Union and the City did not provide for severance payments for covered employees in the event their position was abolished. *See* Item 53, ¶ 18. Rather, severance pay was offered to the Detention Aides as the result of extensive bargaining between the City and the Union to settle pending improper employment practice charges regarding the impact of the City's decision to transfer Detention Aides' duties to uniformed police officers. As stated in *Jackson v. Lyons Falls Pulp & Paper, Inc.*, 865 F. Supp. 87 (N.D.N.Y. 1994):

> Because plaintiff was not otherwise entitled to receive severance pay and benefits, the award of severance pay and benefits was a privilege rather than

> a right. As such, defendant's refusal to supply plaintiff with severance pay and benefits can not be characterized as an adverse action. Instead, defendant merely declined to enlarge plaintiff's rights to compensation.

*Id.* at 95 (citing *Cronin v. ITT Corp.*, 737 F. Supp. 224, 230 (S.D.N.Y.), *aff'd*, 916 F.2d 709 (2d Cir. 1990)).

Furthermore, the law is also clear that "an employer may require employees to execute a release of claims as a condition of receiving severance benefits. Offering severance benefits in return for a general release of claims is neither retaliatory nor discriminatory." *Davis v. Precoat Metals*, 328 F. Supp. 2d 847, 852 (collecting cases); *see also Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1042 (11th Cir. 2007) ("employers have no obligation to vary the compensation offered for a release based on the potential strength of an employee's claim."); *Griffin v. Kraft Foods, Inc.*, 62 F.3d 368, 374 (11th Cir. 1995) (rejecting argument that severance plan's ADEA waiver constituted disparate treatment under the ADEA because older employees received no additional consideration for waiving such claims, which younger employees lacked).

Based on these holdings, and considering the undisputed facts presented in the submissions on file, it is apparent to the court that plaintiff suffered no adverse employment action as a result of defendants' offer of severance pay in return for a release of all claims against the City pertaining to the transfer of Detention Aides' duties to uniformed police officers. Accordingly, even if plaintiff's complaint could be construed to assert cognizable claims against the City for unequal treatment in the negotiation of the Settlement and Separation Agreements, retaliation for filing NYSDHR charges, or any other allegedly discriminatory conduct, those claims would fail as a matter of law, and any attempt to replead them would be futile.

**D. City as "Employer" Under LMRA/NLRA**

Plaintiff's Third Claim For Relief, broadly construed, asserts a "hybrid" claim against the City, as his employer, for breach of its duty under the collective bargaining agreement to negotiate fair terms of separation from employment, in violation of Section 301 of the LMRA, 29 U.S.C. § 185; and against the Union, as his bargaining representative, for breach of its duty to fairly and adequately represent him, a duty "which is implied under the scheme of" the NLRA, 29 U.S.C. § 151 *et seq.* *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164 & n. 14 (1983). However, it is now well-settled in the Second Circuit that, since political subdivisions of the States are not considered to be "employers" under either the LMRA or the NLRA, the federal courts lack subject matter jurisdiction over hybrid breach of collective bargaining agreement/duty of fair representation claims brought by their employees. *See Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (LMRA "exempt[s] from the definition of employer 'any State or political subdivision thereof' "); *Smith v. United Fed'n of Teachers*, 162 F.3d 1148, 1998 WL 639756, at *1 (2d Cir.) ("[Plaintiff's] claim against the Union is clearly predicated on his assertion that the employer violated the collective bargaining agreement between it and the Union. Because there is no federal jurisdiction over the employer, there is no jurisdiction over the companion claim against union for breach of the duty of fair representation."), *cert. denied*, 525 U.S. 883 (1998).

Based on this analysis, the court finds that the City has met its burden of demonstrating the absence of any genuine issues of material fact for trial on the claims brought against it in this action, and plaintiff has come forward with no specific facts

showing that trial is needed. Accordingly, the City is entitled to summary judgment as a matter of law dismissing the complaint.

### III. The Union's Motion for Summary Judgment

#### A. Lack of Subject Matter Jurisdiction

As explained in the immediately preceding discussion, because there is no federal jurisdiction over the City for plaintiff's claim brought under the LMRA for breach of the collective bargaining agreement, there is no subject matter jurisdiction over the companion claim against the Union for breach of the duty of fair representation as implied under the scheme of the NLRA. *See Smith*, 1998 WL 639756, at *1. The Union is therefore entitled to summary judgment dismissing plaintiff's "hybrid" claim.[4]

#### B. Discrimination

Finally, in his Fourth Claim for Relief, plaintiff claims that the Union "discriminated against him on account of his race with respect to the making of a contract, i.e., the 'settlement agreement' or 'separation agreement and general release . …'" Item 1, ¶ 54. As discussed above with respect to plaintiff's discrimination claim against the City, plaintiff cannot establish a *prima facie* case of discrimination regarding defendants' conduct in negotiating the Settlement and Separation Agreements because he suffered no adverse employment action as a result of the extensive bargaining between the City and the Union

[4]The Union also contends that, to the extent the complaint can be construed to plead a state law claim for breach of the duty of fair representation, such a claim would be untimely under the four-month statute of limitations in N.Y.C.P.L.R. § 217(2)(a). The court declines to address this contention. Plaintiff has not asserted a state law basis for his breach of duty claim against the Union in this action, and in the absence of subject matter jurisdiction over plaintiff's "hybrid" federal law claim, the court declines to exercise its supplemental jurisdiction in order to reach the timeliness issue.

to settle pending improper employment practice charges concerning the impact of the City's decision to transfer Detention Aides' duties to uniformed police officers. This holding applies with equal force to both sides of the bargaining table.

Accordingly, the Union is entitled to summary judgment as a matter of law dismissing the discrimination claim against it.

## CONCLUSION

Based on the foregoing, the motions for summary judgment filed by the Union (Item 51) and the City (Item 52) are granted, and the complaint is dismissed in its entirety.

The parties shall bear their own costs.[5]

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: 1/6 , 2012
p:\pending\2009\09-633.dec27.2011

[5] As a result of this order, the City's motion for sanctions and contempt (Item 40) is denied as moot.